IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **Kortek Industries Pty Ltd**.<br><br>Plaintiff,<br><br>v.<br><br>**Shenzhen Ecoflow Technology Limited,**<br><br>Defendant. | Civil Action No. 6:22-cv-00489-ADA<br><br>The Honorable Alan D. Albright<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF'S MOTION FOR LEAVE TO
EFFECT ALTERNATIVE SERVICE ON DEFENDANT**

Plaintiff Kortek Industries Pty Ltd. ("Plaintiff" or "Kortek") files this Motion and respectfully seeks leave to serve the summons and complaint on Shenzhen Ecoflow Technology Limited, ("Defendant" or "Ecoflow") through its U.S. counsel, et al. as follows:

**I.      BACKGROUND/ PARTIES**

Plaintiff Kortek is a limited by shares Australian proprietary (private) company with its principal place of business located at 34-691 Brunswick St, New Farm, QLD 4005, Australia. Kortek is an Australian engineering firm that develops sensors, controllers, and gateways for building cloud connected systems. DE1 at ¶ 1.

Upon information and belief, Defendant Ecoflow is a limited liability company organized and existing under the laws of the People's Republic of China, with a principal place of business located at Factory Building A202, Founder Technology Industrial Park, Longteng Community, Shiyan Sub district, Baoan, Shenzhen Guangdong 518108 China. *Id*. at ¶ 2. On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the

1

Western District of Texas, and otherwise directs infringing activities to this District in connection with its products and services. *Id.* at ¶ 3.

On May 12, 2022, Kortek filed a complaint in this court alleging claims for patent infringement against Defendant. *Id.* On May 18, 2022 Defendant was served via international mail at their place of business in China. *See* Group Exhibit A. Additionally, Defendant was served at the Texas Secretary of State, who sent registered mail to Defendant's China address on May 23, 2022. *See* Group Exhibit B. Defendant has not yet answered the complaint.

Plaintiff respectfully requests leave to effect service upon Defendant through the alternative means of emailing previous U.S. counsel for Defendant: Mr. Ben Natter, at bnus@haugpartners.com. Mr. Natter has represented Ecoflow on several trademark matters at the USPTO. *See* Group Exhibits C and D.

Plaintiff also respectfully requests leave to effect service upon Defendant through the alternative means of messaging Defendant's CEO and Founder, Lei Bruce Wang, through Ecoflow's publicly available LinkedIn profile. *See* Group Exhibits E-G.

Plaintiff also respectfully requests leave to effect service upon Defendant through the alternative means of messaging Defendant's CEO and Founder, Lei "Bruce" Wang, through Ecoflow's publicly available Facebook profile. *See* Group Exhibit H.

Plaintiff also respectfully requests leave to effect service upon Defendant through the alternative means of messaging Defendant's CEO and Founder, Lei "Bruce" Wang, through Ecoflow's publicly available Kickstarter profile. See Group Exhibit I and J.

Plaintiff also respectfully requests leave to effect service upon Defendant through the alternative means of messaging Defendant's CEO and Founder, Lei "Bruce" Wang, through Ecoflow's publicly available Instagram profile. *See* Group Exhibit K and L.

HOU 4522669.1

Plaintiff also respectfully requests leave to effect service upon Defendant through the alternative means of emailing Defendant's CEO and Founder, Lei "Bruce" Wang, through Defendant's publicly listed email address. See Group Exhibits M – O.

Plaintiff also respectfully requests leave to effect service upon Defendant through the alternative means of emailing Defendant's CEO and Founder, Lei "Bruce" Wang, through his publicly listed email address. See Group Exhibits P and Q.

## II.  EVIDENCE

Plaintiff attaches as Group Exhibit A the Affidavit of Service on Shenzhen Ecoflow Technology Limited in Shenzhen Guangdong, China by registered mail. *See* Ex. A.

Plaintiff attaches as Group Exhibit B the Certificate of Service on Shenzhen Ecoflow Technology Limited. by physical service on the Texas Secretary of State, who in turn attempted to serve Shenzhen Ecoflow Technology Limited by registered mail in China. *See* Ex. B.

Plaintiff attaches as Group Exhibit C the list of trademarks as filed by Ecoflow at the U.S. Patent and Trademark Office. *See* Ex. C.

Plaintiff attaches as Group Exhibit D the documents listing for U.S Trademark serial number 97036335, which shows attorney Mr. Ben Natter as representing Ecoflow. *See* Ex. D.

Plaintiff attaches as Group Exhibit E a TechCrunch article identifying Lei "Bruce" Wang as EcoFlow CEO. *See* Ex. E.

Plaintiff attaches as Group Exhibit F a Bloomberg article identifying Bruce Wang as EcoFlow CEO, and Ecoflow's expected IPO in China. *See* Ex. F.

Plaintiff attaches as Group Exhibit G EcoFlow's LinkedIn Profile page. *See* Ex. G.

Plaintiff attaches as Group Exhibit H EcoFlow's Facebook page. *See* Ex. H.

Plaintiff attaches as Group Exhibit I a 2022 Kickstarter campaign page for an Accused Product, identifying the campaign as having been created by Ecoflow. *See* Ex. I.

Plaintiff attaches as Group Exhibit J a Kickstarter 'About the Creator' page detailing Ecoflow as the creator, indicating that Ecoflow last logged in to the page as recently as August 17 2022, and providing a "Contact Me" button to contact Ecoflow. *See* Ex J.

Plaintiff attaches as Group Exhibit K Ecoflow's Instagram Profile page. *See* Ex K.

Plaintiff attaches as Group Exhibit L Ecoflow's most recent post to its Instagram Profile page, indicating it was posted 11 hours from when retrieved on August 17 2022. *See* Ex L.

Plaintiff attaches as Group Exhibit M a profile page for Shenzhen Zhenghao Innovation Technology Co Ltd posted on QCC.com, a China based enterprise information searching platform. *See* Ex M.

Plaintiff attaches as Group Exhibit N an email address for Shenzhen Zhenghao Innovation Technology Co Ltd (company@ecoflow.com) posted on QCC.com. *See* Ex N.

Plaintiff attaches as Group Exhibit O an article detailing that Shenzhen Zhenghao Innovation Technology Co Ltd changed its name to Ecoflow in 2021. *See* Ex O.

Plaintiff attaches as Group Exhibit P an Annual Report for Shenzhen Pioneer Haozheng Technology Partnership Co Ltd containing an email address for contact being bruce.wang@ecoflow.com. *See* Ex P.

Plaintiff attaches as Group Exhibit Q an article detailing the shareholding of Ecoflow, indicating that Shenzhen Pioneer Haozheng Technology Partnership Co Ltd is the Ecoflow's largest shareholder. *See* Ex Q.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 4(h) governs the service of process on corporations outside the United States. Fed. R. Civ. P. 4(h). Pursuant to Rule 4(h)(2), service on a corporation at a place not within any judicial district of the United States is to be conducted "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under Rule 4(f)(2)(C)(i)." *Id*. Rule 4(f) allows service of process by internationally agreed-upon means (e.g., the Hague Convention), and also by "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3).  "Thus, so long as the method of service is not *prohibited* by international agreement the Court has considerable discretion to authorize an alternative means of service." *Affinity Labs*, 2014 U.S. Dist. LEXIS 185740, at *4 (emphasis in original) (citing *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text.").

Moreover, a plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) before requesting authorization of an alternative method of service under Rule 4(f)(3). *Id*. at 2 (citing *Rio Properties, Inc.*, 284 F.3d at 1015 ("[E]xamining the language and structure of Rule 4(f) and the accompanying advisory committee notes, we are left with the inevitable conclusion that service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.' It is merely one means among several which enables service of process on an international defendant.").

Thus, the Court may authorize any alternative method of service that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust*

*Co.*, 339 U.S. 306, 314 (1950). Additionally, district courts have routinely allowed alternative service upon foreign corporations to be accomplished by serving a United States subsidiary or affiliate of a foreign entity.[1]

IV.   **ARGUMENT AND AUTHORITIES**

        **A.  Plaintiff's proposed alternative service under Rule 4(f)(3).**

Plaintiff seeks to serve Defendant using the following method: via email on Mr. Ben Natter, at bnus@haugpartners.com. This individual represented Defendant in the United States as recently as July 29, 2022 and is a member of the law firm Haug Partners, LLP.

        **B.  This Court may order service by other means to prevent years-long delays in attempting to serve defendants in China via the Hague Convention.**

Defendant is an entity organized and existing under foreign laws: DE 1 at ¶ 2. Neither the Hague Convention or any other international agreement prohibits service on a foreign corporation through its U.S. counsel, in-house counsel, or a wholly-owned U.S. subsidiary. *See* Order Granting Plaintiff's Motion for Leave to Effect Alternative Service on Defendant Taiwan Semiconductor Manufacturing Company Limited at 2-3, *STC.UNM v. Taiwan Semiconductor Mfg. Co. Ltd.*, No. 6:19-cv-00261-ADA (W.D. Tex. May 29, 2019).

The Court may properly order service by other means for the purposes of saving time and expense, *Affinity Labs*, 2014 U.S. Dist. LEXIS 185740, at *9, and recent cases and statements by the Chinese Central Authority demonstrate that it literally takes *years* to even attempt to effect

---

[1] *See, e.g., Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239 (Fed. Cir. 2010) (collecting cases allowing service of foreign entities through domestic subsidiaries and counsel); *Lisson v. Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 280 (S.D.N.Y. 2013) (service of Chinese corporate executive allowed via corporation's registered agent in US); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (authorizing service on CEO living in China via service to his company's registered domestic agent and counsel); *In re LDK Solar Secs. Litig.*, No. C07-05182 WHA, 2008 WL 2415186, at *4 (N.D. Cal. June 12, 2008) (service on six Chinese defendants through California subsidiary granted).

service in China via the Hague Convention[2]. For example, in *Victaulic*, 2020 U.S. Dist. LEXIS 82150, the plaintiff lost almost three years (more than 34 months) between 2018 and 2020 attempting to effect service via the Chinese Central Authority pursuant to the Hague Convention. Id. at *3. The *Victaulic* court specifically noted that plaintiff's inability to effect service was "not attributable to Plaintiff, but rather stems from the Chinese Central Authority's slow-walk in facilitating the request." *Id*. The decision further documents that "[o]n August 14, 2018, ..., the Ministry of Justice in China noted that service is 'time-consuming and not efficient' and confirmed that it often takes more than two years to complete." *Id*. And, the COVID-19 pandemic is expected to only further exacerbate the long-standing delays in serving Chinese Defendants via the Hague Convention. E.g., *Victaulic*, 2020 U.S. Dist. LEXIS 82150, at *3-4.

Moreover, serving Defendant through alternative means is justified because the proposed method "will provide reasonable notice and an opportunity to be heard." *Id*. at 3 (citing *Affinity Labs* at *3 ("Due process requires that notice be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'") (quoting *Mullane*, 339 U.S. at 314)). Several courts, including this Court, have permitted effecting service of process upon companies via email. In *Terrestrial Comms LLC v. NEC Corporation*, this Court reasoned that email service upon counsel for NEC Corporation was authorized because "[d]istrict courts routinely direct service on an international defendant's counsel under Rule 4(f)(3) even if the counsel has not been expressly authorized to accept service on the defendant's behalf." *See Terrestrial Comms LLC v. NEC Corporation*, 6:20-cv-00096-ADA (W.D. Tex. June 24, 2020). The Court also clarified that the key analysis to consider was whether

---

[2] *Victaulic Co. v. Allied Rubber & Gasket Co*., No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *3 (S.D. Cal. May 8, 2020) (finding alternative service under Rule 4(f)(3) necessary due to China's delays in effecting service under Hague Convention).

the defendant is reasonably certain to be informed of the pending lawsuits so that it can present its objections, and found that effecting service of process on defendant's known U.S. counsel would allow defendant to be reasonably certain to be apprised of the pending actions. *Id*. at 7-8; *Fourte Int'l Ltd. BVI v. Pin Shine Indus. Co*., No. 18-CV-00297-BAS-BGS, 2019 WL 246562, at *3 (S.D. Cal. Jan. 17, 2019) (allowing email service on local counsel of foreign company); *In re TFT-LCD (Flat Panel) Antitrust Litig*., 270 F.R.D. 535, 536-38 (N.D. Cal. 2010) (allowing service on U.S. Counsel of foreign company); *Alu, Inc. v. Kupo Co*., No. 6:06-cv-327-ORL28DAB, 2007 WL 177836, at *3-4 (M.D. Fla. Jan.19, 2007) (allowing email service on a foreign corporation). Email is not only a permissible means of alternative service but has been considered one of the *best* forms of alternative service because it is "aimed directly and instantly" at the foreign defendant. *Rio Properties, Inc*., 284 F.3d at 1018.

### C. There is no international agreement that prohibits serving defendants in China by other means (such as email, social media, and mail).

Neither the Hague Convention nor any other international agreement bars service of the summons and complaint on Defendants via other means. Numerous courts have determined that although China objected to certain articles in the Hague Convention, there is no international agreement that prohibits alternative service of process upon defendants in China via their agents in the U.S. or via email. For these reasons, the Central District of California permitted alternative service upon Chinese defendants via service upon their U.S. counsel and to their designated contact emails in *Likas v. Chinacache Int'l Holdings, Ltd.,* No. CV 19-6942 FMO (SSx), 2020 U.S. Dist. LEXIS 90923, at *7 (C.D. Cal. Jan. 29, 2020). The Likas court's analysis was thorough and detailed, stating:

> The court first considers whether plaintiffs' proposed alternative means of service [upon defendants in China] are prohibited by international agreement. **The court finds that neither service on [Defendant] ChinaCache's [U.S.] counsel,**

**Simpson Thacher, nor by email is prohibited by international agree ment, including the Hague Convention, even when taking into account China's objections to certain articles of the Hague Convention.** *See, e.g., Juicero, Inc. v. Itaste Co*., 2017 U.S. Dist. LEXIS 86033, 2017 WL 3996196, *2 (N.D. Cal. 2017) **(finding that service on Chinese defendants' U.S.-based counsel not prohibited by the Hague Convention)** … *Microsoft Corp. v. Goldah.com Network Tech. Co., Ltd*., 2017 WL 4536417, *4 (N.D. Cal. 2017) **("China's objection to Article 10 does not prohibit the email service the Court ordered in the instant case.")**; *Secs. and Exch. Comm'n v. China Sky One Med., Inc*., 2013 WL 12314508, *2 (C.D. Cal. 2013) **("While there is some disagreement on this issue, numerous courts have held that service by e -mail does not violate the Hague Convention, even when the destination country has objected to service through postal channels under Article 10.")**).

*Likas*, 2020 U.S. Dist. LEXIS 90923, at *6-7 (emphases added).

Moreover, courts have permitted service by social media networking sites such as LinkedIn, Facebook, and Twitter in combination with email service. See WhosHere, Inc. v. Orun, No. 1:13-CV-00526-AJT, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) ("Turkey has not specifically objected to service by email or social media networking sites which are not explicitly listed as means of service under Article 10."); F.T.C. v. PCCare247 Inc., No. 12 CIV. 7189 PAE, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) ("Service by email and Facebook are not among the means listed in Article 10…[s]ervice by Facebook is clearly outside the scope of Article 10."). As noted in PCCare247, 2013 WL 841037, at *5, it is appropriate to include service by social media as "a supplemental means of service" in addition to service by email.  The court explained that the "proposal to serve defendants by both email and Facebook satisfies the due process inquiry." Id. at *6 (emphasis in original).

As demonstrated by these many decisions, there is no international agreement that would prohibit service on Defendant under Rule 4(f)(3) via email to their attorney in the U.S. Service pursuant to Hague Convention procedures is required only if the method of serving process involves the transmittal of documents abroad. *Terrestrial Comms LLC v. NEC Corp*., No. 6:19-

CV-00597-ADA, 2020 U.S. Dist. LEXIS 106909, at *6 (W.D. Tex. June 17, 2020) (citing *Volkswagenwerk*, 486 U.S. at 707 ("The only transmittal to which the [Hague] Convention applies is a transmittal abroad that is required as a necessary part of service.")). But electronic service by email, as requested here, does not involve the transmittal of documents abroad and does not violate the Hague Convention, *Terrestrial*, 2020 U.S. Dist. LEXIS 106909, at *6, nor does service by mail to addresses in the U.S.[3]

Defendant Ecoflow has filed several trademarks at the USPTO. *See* Ex. C (a list of trademarks filed by Defendant Ecoflow as seen on the USPTO website https://tmsearch.uspto.gov/). Mr. Ben Natter is the attorney of record on at least three of these trademark applications, for example serial no. 97036335. *See* Ex. D. (https://tsdr.uspto.gov/#caseNumber=97036335&caseType=SERIAL_NO&searchType=statusSearch). Because Mr. Natter has represented Ecoflow in these matters as a U.S. attorney, it is therefore proper as shown *supra* to effect service on him via email under Rule 4(f)(3).

Ecoflow also has a presence on social media. For example, Ecoflow has a profile page on LinkedIn where users can follow their activity. In fact, Ecoflow has 4,276 followers on LinkedIn. *See* Ex. G (https://www.linkedin.com/company/ecoflowtech/). Mr. Wang is the CEO of Ecoflow. *See* Ex. E (https://techcrunch.com/2022/05/02/ecoflow-glamping-portable-battery/) and Ex. F (https://www.bloomberg.com/news/articles/2021-12-09/sequoia-backed-battery-unicorn-prepares-for-ipo-as-demand-spikes). A service message addressed to Ecoflow's CEO

---

[3] Courts have determined "e-mail is sufficiently distinct from postal channels that the two should not be equated under the Hague Convention." *Secs. & Exch. Comm'n v. China Sky One Med., Inc.*, No. CV1207543MWFMANX, 2013 WL 12314508, at *3 (C.D. Cal. Aug. 20, 2013) (reviewing cases to determine China's objection to Article 10 does not prevent service by email because it is distinct from postal channels); *see also Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015) ("China's objection to service by postal mail does not cover service by email."); *F.T.C. v. Pecon Software Ltd.*, No. 12 CIV. 7186 PAE, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10.").

(Mr. Lei "Bruce" Wang) and sent to the Ecoflow LinkedIn site would certainly come to his attention.

Additionally, Ecoflow has a social media presence on Facebook. *See* Ex. H (https://www.facebook.com/ecoflowtech). Facebook has a messaging function, which would also be an appropriate method for sending service to Mr. Lei "Bruce" Wang, since he would be certain to receive a message sent.

Additionally, Ecoflow has a social media presence on Instagram. See Ex K (https://www.instagram.com/ecoflowtech/). Ecoflow's profile indicates the profile has been used as recently as 11 hours from when searched by Plaintiff. See Ex L. Instagram has a messaging function, which would also be an appropriate method for sending service to Mr. Lei "Bruce: Wang, since he would be certain to receive a message sent.

Additionally, Ecoflow has a public presence on Kickstarter, having undertaken multiple campaigns on the platform, including at least one campaign for an Accused Product that raised in excess of $12 million. *See* Ex I (https://www.kickstarter.com/projects/ecoflow/ecoflow-delta-pro?ref=discovery&term=ecoflow ). Ecoflow's Kickstarter profile indicates the profile was last accessed by Ecoflow as recently as August 17 2022. *See* Ex J. Kickstarter has a messaging function, which would be an appropriate method for sending service to Mr. Lei "Bruce" Wang, since he would be certain to receive a message sent.

Thus, it would be appropriate to use Ecoflow's LinkedIn, Facebook, Instagram and Kickstarter messaging systems for supplemental service to Mr. Lei "Bruce" Wang.

Defendant Ecoflow has a presence on China based enterprise information gathering websites. One such site, QCC.com, contains a profile page for Shenzhen Zhenghao Innovation Technology Co, Ltd. *See* Ex M. That profile page contains contact details for Shenzhen

11

Zhenghao Innovation Technology Co, Ltd, including an email address for the company detailed as being 'company@ecoflow.com'. *See* Ex N. Shenzhen Zhenghao Innovation Technology Co, Ltd is Defendant Ecoflow, having changed its name in 2021. *See* Ex O. An email to 'company@ecoflow.com' for the attention of CEO Mr. Lei "Bruce" Wang would certainly come to his attention.

Qixin.com is a China based online platform that provides information related to Chinese companies. A profile page exists for Shenzhen Pioneer Haozheng Technology Partnership Co Ltd. *See* Ex P ( https://www.qixin.com/report/93bd194b-3a2b-4d10-baf8-2eb55bb0ea47/2018 ). Information contained on that profile page includes an email address for contacting the company listed as being 'bruce.wang@ecoflow.com'. Ecoflow CEO Mr Lei "Bruce" Wang is known as Bruce Wang. *See* Ex F. iMedia is a news publishing website (https://min.news/). An article on that website details the shareholding of Ecoflow, indicating that Shenzhen Pioneer Haozheng Technology Partnership Co Ltd is the Ecoflow's largest shareholder. *See* Ex Q. There is therefore a link between Shenzhen Pioneer Haozheng Technology Partnership Co Ltd and Ecoflow such that it is reasonable to expect that an email sent to 'bruce.wang@ecoflow' would be received by Ecoflow CEO Mr Lei "Bruce" Wang.

V.  **CONCLUSION**

For the above-enumerated reasons, Plaintiff respectfully requests the Court to grant this motion and enter an order authorizing alternative service of process on Defendant Ecoflow through e-mail upon former U.S. counsel pursuant to Rule 4(f)(3), and service on CEO Mr. Lei "Bruce" Wang via Ecoflow's LinkedIn, Facebook, Instagram and Kickstarter accounts, and service on CEO Mr Lei "Bruce" Wang via email to publicly listed emails for Ecoflow the company.

Dated: August 17, 2022

Respectfully submitted,

By: /s/ Erick S. Robinson

Erick S. Robinson
Texas Bar No. 24039142
Spencer Fane LLP
3040 Post Oak Boulevard
Suite 1300
Houston, TX 77056
Telephone: (713) 212-2638
Mobile: (713) 498-6047
Fax: (713) 963-0859
erobinson@spencerfane.com
*Attorneys for Kortek Industries Pty Ltd.*

HOU 4522669.1